# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## FOURTH DIVISION

| | |
|---|---|
| Datalink Corporation, | Case No: 13-CV-02978-SRN-JJG |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE** |
| v. | |
| Perkins Eastman Architects, P.C., | |
| Defendant. | |

Defendant, Perkins Eastman Architects, P.C. (hereinafter "Perkins Eastman" or "Defendant"), by and through its attorneys, Foley & Mansfield, PLLP, hereby submit this memorandum in support of its motion to dismiss Datalink Corporation's (hereinafter "Datalink" or "Plaintiff") Complaint, or in the alternative, transfer venue to the United States District Court for the Southern District of New York.

## INTRODUCTION

Perkins Eastman is a New York corporation with its principal place of business in New York, New York. Datalink is a Minnesota corporation with its principal place of business in Eden Prairie, Minnesota. On September 26, 2013, Minnesota counsel for Datalink signed a Summons and Complaint and a cover letter addressed to "Perkins Eastman Architects, P.C." to the attention of no one in particular. Datalink also sent a copy to the Minnesota Secretary of State with instructions to send a copy to Perkins Eastman, "attention Lawrence Bradford Perkins" (company co-founder and Chairman). The envelope is postmarked October 1, 2013. Perkins Eastman received the copy from

the Minnesota Secretary of State on or about October 2, 2013. Declaration of Andrew J. Adelhardt III ("Adelhardt Decl."), ¶ 4.

Plaintiff's Complaint contains two counts: breach of contract, and unjust enrichment. Plaintiff originally brought its lawsuit in Hennepin County District Court. On October 30, 2013, Defendant timely filed a removal to this Court. Defendant now brings this motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process as Defendant was never properly served, and under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, Defendant respectfully requests the Court transfer this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

In or around December 2012, Defendant contacted Plaintiff to evaluate some software and hardware updates across its data center locations. (Compl. ¶ 5.) On December 20, 2012, Plaintiff submitted a price quotation to Defendant for the proposed work and services. (Compl. ¶ 6.) This quotation included costs associated with hardware and software, as well as expenses associated with training and professional services. (*Id.*)

On December 27, 2012, John Aiello ("Aiello"), Plaintiff's Account Executive for the project, allegedly received a signed purchase order from Kim Lam ("Lam"), Defendant's Associate Principal Director of Technology. (Compl. ¶ 7.) This purchase order set forth the scope of work for the project to be provided by Plaintiff. The purchase order was later reduced to a "Statement of Work," under which Plaintiff offered to install

and integrate appliances and software with Defendants data center locations in Charlotte, Washington D.C., Shanghai, Chicago, Pittsburgh, New York, and Connecticut. (Compl. ¶ 8.)

Plaintiff began work on the project pursuant to its self-prepared and unsigned Statement of Work. (Compl. ¶ 9; Declaration of Douglas J. McIntyre ("McIntyre Decl.") ¶ 2, Ex. A.) Plaintiff began purchasing the necessary hardware and software to be used in Defendant's data center locations in Charlotte, Washington D.C., Shanghai, Chicago, Pittsburgh, New York, and Connecticut. (*Id.*) Plaintiff then submitted invoices to Defendant for its work at the aforementioned locations. (*Id.*)

On March 27, 2013, Ms. Lam contacted Mr. Aiello regarding concerns she had with the project. (Compl. ¶ 11.) Ms. Lam had requested additional information from Mr. Aiello to make a decision on purchasing the goods and services offered by Plaintiff. Ms. Lam said she would review Mr. Aiello's arguments for using Plaintiff's company rather than a competitor. (*Id.*) Meanwhile, Plaintiff continued to send invoices to Defendant for work and services it performed pursuant to the unsigned Statement of Work it prepared. (Compl. ¶ 13.) In August, one month before the Summons and Complaint was mailed to Defendant, Plaintiff's CFO, Denise Westenfield contacted Defendant about Plaintiff's unpaid invoices. (Compl. ¶ 14.)

Plaintiff's Complaint does not allege that any of the goods it delivered, or any services it performed for Defendant, had any connection to Minnesota. Indeed, none of the locations of Defendant's data centers called for in the Statement of Work are in Minnesota. Defendant does not have a Minnesota office. A significant portion of the

work Plaintiff performed was in New York or at Defendant's other East Coast locations, *e.g.*, Pittsburgh, Washington D.C. and Connecticut. (*See generally* Compl.) None of the work performed was in Minnesota.

Plaintiff's Complaint makes no allegation that any employees involved in the alleged deal performed the work at the data centers are from its Minnesota office. Plaintiff's Complaint mentions four employees by name, and only one of them— CFO Denise Westenfield, who became involved in this contract suit immediately before Datalink filed suit—<u>might</u> be based at Datalink's Minnesota office. The other three, including Mr. Aiello and Ms. Lam—the party-employees who negotiated the deal at the heart of this dispute—are both based in New York. (*See generally* Compl.)

## ARGUMENT

As noted, Plaintiff originally brought its lawsuit in Hennepin County District Court, and Defendant timely filed a removal to this Court. No appearances were made by Defendant in the Minnesota State Court action. As such, Defendant's jurisdictional defenses should remain in place. "Removal, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction." *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988). *See also* Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1395 ("A party who removes an action from a state to federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.") and cases cited therein. It is also evident that Defendant maintains their jurisdictional defenses here at the federal court, "[W]here a state court lacks jurisdiction of the subject matter or of the parties, the federal District Court acquires none on a

removal of the case." *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 449 (1943); *See also Gale v. Smock*, 64 F.R.D. 330, 333 (S.D. Iowa 1974), (where a timely removed to federal court, a defendant waives no objections to jurisdiction or service of process.)  Based upon these legal precepts, Defendant now moves to dismiss Plaintiff's suit under Rule 12.

**I.      Plaintiff's Complaint Must Be Dismissed Based on Insufficient Service of Process.**

Plaintiff's Summons and Complaint was never properly served on Defendant. Defendant is a New York corporation with its principal place of business in New York, New York.  (Compl. at ¶ 3.)  Defendant is not registered with the Minnesota Secretary of State, not authorized to do business in the state of Minnesota, has no employees in Minnesota, and has no assets in Minnesota.  (Adelhardt Decl. at ¶¶ 2-3.)  Defendant has no registered agent in Minnesota.  (*Id.* at ¶ 2.)

Plaintiffs apparently attempted service under Minnesota's long arm jurisdiction statute, Minn. Stat. § 5.25.  Defendants received a copy of Plaintiff's Summons and Complaint via U.S. Mail from the Minnesota Secretary of State on or about October 2, 2013.  (Adelhardt Decl., at ¶ 4.)  However, service of an action on a foreign corporation via the Minnesota Secretary of State is improper when the foreign corporation is not authorized to transact business in the state.  Minn. Stat. § 5.25, subd. 4(a) ("Service of a process, notice, or demand may be made on <u>a foreign corporation authorized to transact business in this state</u> by delivering to and leaving with the secretary of state. . . .") (emphasis added).  Service on Defendant was deficient and Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

**II.** **Plaintiff's Complaint Must Be Dismissed Based on Lack of Personal Jurisdiction Over Defendant.**

Plaintiff's Complaint must be dismissed based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of pleading facts to support personal jurisdiction over a defendant in the court of plaintiff's choosing. *Newhard, Cook & Co. v. Inspired Life Ctrs., Inc.,* 895 F.2d 1226, 1228 (8th Cir. 1990). Plaintiff's burden cannot be satisfied by mere labels and conclusory allegations, rather, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quotation omitted); *see also Greenbelt Res. Corp. v. Redwood Consultants, LLC*, 627 F.Supp 2d 1018, 1026 (D. Minn. 2008). Plaintiff's Complaint fails to meet this burden, as it fails to allege sufficient facts that would subject this contract dispute to this Court's jurisdiction.

The Eighth Circuit has adopted a five-factor test for determining whether a plaintiff has established that a defendant has sufficient minimum contacts with the forum to satisfy the requirements of personal jurisdiction. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).[1] This test consists of:

1) The nature and quality of the contacts;

2) The quantity of the contacts;

3) The relation of the cause of action to these contacts;

---

[1] The Minnesota Supreme Court has adopted the same five-factor test. *See, e.g., Dent-Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn. 1983).

4)      The interest of the forum state in providing a forum for its residents; and

5)      The convenience of the parties.

*Id.* at 562 (citation omitted).  Applying this test, it is readily apparent that Plaintiff has not plead facts sufficient to establish personal jurisdiction here.

**1.      Plaintiff's Complaint Fails to Allege Facts Sufficient to Establish Jurisdiction Over Defendant.**

There are two types of personal jurisdiction: specific, and general.  Specific jurisdiction exists when a defendant has purposefully directed its conduct at the forum state and "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004).  To establish specific jurisdiction, a plaintiff must demonstrate that the cause of action "is related to or arises out of the defendants contacts with the forum state." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006).  Plaintiff's Complaint contains no allegations that establish a pattern of contacts by Perkins Eastman with Minnesota.  Instead, the face of the Complaint, coupled with other relevant facts, establish that the gravamen of the dispute involves a New York contract negotiated in New York for services and goods to be specifically delivered outside the State of Minnesota.

A cursory review of Plaintiffs Complaint confirms this.  Attached to Plaintiff's Complaint is an unsigned document entitled "Datalink Statement of Work."  (McIntyre Decl., ¶ 2, Ex. A, at p. 5.)  On page 5 of this document it states:

> Datalink shall configure a total of nine (9) NBU 7.5 appliances and configure Symantec NetBackup software . . .

> on premises at Perkins Eastman's New York City, New York ("NYC") and Collocation [sic] (COLO) Data Center as well as some installations remotely.

The eight locations listed in the "Datalink Statement of Work" were services to be provided are: 1) Charlotte [North Carolina], 2) Washington DC, 3) Shanghai [China], 4) Chicago [Illinois] 5) Stamford [Connecticut], 6) Pittsburgh [Pennsylvania], 7) New York, [New York], and 8) Colocation, [Connecticut]. None of these express locations of contract performance are in Minnesota.

Plaintiff's Complaint also identifies what appears to be three employees of Datalink who were to be designated as "Project Contacts" presumbably overseeing the management of the work to be done under the contract. On page 13 of the "Datalink Statement of Work," the following table appears:

## 4 DATALINK PROJECT CONTACT AND LOCATION INFORMATION

### 4.1 PROJECT CONTACTS

| Contact Name | Contact Email | Contact Phone |
|---|---|---|
| Jay Holt<br>Regional Engineering Director | jholt@datalink.com | 609-323-5095 |
| John Aiello<br>Account Executive | jaiello@datalink.com | 845-667-1502 |
| Michael McCasland<br>Senior Solutions Engineer | mmccasland@datalink.com | 973-444-5068 |
| Alan Ho<br>Customer Sponsor | a.ho@perkinseastman.com | 212-353-7388 |

(McIntyre Decl., ¶ 2, Ex. A, at p. 13.) None of these representatives of the parties live or work in Minnesota. Starting from the top of table 4.1, "Project Contacts," Jay Holt, Datalink's Regional Engineering Director, has a contact phone number with a Trenton, New Jersey area code (609). Mr. Aiello, Datalink's Account Executive on the Perkins Eastman project, has a contact phone number with a Hudson Valley, New York area code

8

(845).  Michael McCasland, Datalink's Senior Solutions Engineer, has a contact phone number with a Northern New Jersey area code (973).  And Alan Ho, the Customer Sponsor from Perkins Eastman, has a contact phone number with a Manhattan area code (212) and is located in Defendant's New York office.  (Adenhardt Decl., at ¶ 5.)

Plaintiff's Complaint also refers to a "Project Location" a "Datalink Statement of Work" at table 4.2.  This tables appears as follows:

**4.2   PROJECT LOCATION**

Work shall be performed at the Perkins Eastman location(s) noted below:

| Contract Name | Street | City | State/Zip | Contact Phone |
|---|---|---|---|---|
| Alan Ho | TBD | New York | NY | 212-353-7388 |

(McIntyre Decl., ¶ 2, Ex. A, at p. 13.)  Note that Table 4.2 states that the **"[w]ork shall be performed at the Perkins Eastman location(s) noted below: New York, NY.** (emphasis added).  Table 4.2 makes no reference to Minnesota.  Therefore, in addition to previously listing eight cities outside of Minnesota, neither the Project Contacts, nor the Project Location, make any reference to Minnesota-based employees of either party, or Minnesota-based projects or work done by Plaintiff for Defendant.

The Court should take note that nowhere in the eleven-paragraph "Facts" section of Plaintiff's Complaint is any mention of Minnesota offices or employees, no reference to any trips by Defendant's employees to Minnesota, or any discussion of trips by Plaintiff's Minnesota employees to New York.  The "Facts" section of Plaintiff's Complaint does list four employees of either company purportedly involved in this dispute (Compl. at ¶¶ 5-15.):  Ms. Lam, Defendant's Associate Principal Director of Technology, who is based in New York.  (Adelhardt Decl., at ¶ 6.); Mr. Aiello, Plaintiff's

Account Executive who has a Hudson Valley, New York area code (845); Candice Carroll, Defendant's CFO, who is based in its New York office (Adelhardt Decl., at ¶ 7.), and Denise Westenfield, listed as CFO of Plaintiff's corporation but whose personal or corporate residence is not referenced anywhere.

### A. Factors 1 and 2: The Nature, Quality and Quantity of the Contacts.

When evaluating the first two points of the five-point test for personal jurisdiction, the Court must recognize that the presence or absence of a contract with a Minnesota resident as a party is not determinative of the jurisdiction of the Court over the person. It has long been recognized that a "contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011). Indeed, long-arm jurisdiction "should not be such that anyone who deals with a Minnesota resident in any way . . . can be brought into the Minnesota courts to respond to a suit." *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 487 (Minn. Ct. App. 1990).

The Court has held that of particular importance in evaluating personal jurisdiction in contract cases is the <u>direction of services.</u> When "the nonresident defendant is a buyer, rather than a seller" and thus "no goods were delivered into the forum," extending personal jurisdiction over Defendant purely based on a contract is not appropriate. *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F.Supp.2d 878, 883 (D. Minn. 2013) (quoting *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.,* 53 F.3d 920, 922 (8th Cir.

1995).  In this case, not only was there no goods or services entering Minnesota, but no goods or services originated from Minnesota.  All of Plaintiff's "Project Contacts" were based on the East Coast.  All of the services originated from its New York office.  The terms of the contract were not negotiated, were not agreed upon, or where not even capable of performance in Minnesota.  (Adelhardt Decl., at ¶ 10.)

Defendant notes that there is one reference in the Complaint to an employee of Plaintiff who may be in Minnesota.  The Complaint references Datalink's CFO's attempt to contact Defendant's CFO in New York in late August, 2013.  (Compl., ¶ 14.)  Neither the Summons nor the Complaint dated September 26, 2013 (about a month after the alleged contact), details the extent of these contacts.  (*See* Compl., at ¶¶ 14-15.)  The only Minnesota employee that allegedly had any contact with Defendant did so at a time when the purported wrongs had already been committed.  These attempts to collect on Plaintiff's invoices via email and telephone are legally insufficient to confer personal jurisdiction as "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction . . . ."  *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *accord, e.g., Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) (same); *Digi-tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 523 (8th Cir. 1996) (exchange of "dozens of letters and faxes" between parties insufficient to establish jurisdiction).

The nature, quality, and quantity of Defendant's contacts with Minnesota— namely, the lack thereof—warrant a dismissal of Plaintiff's Complaint based upon the lack of personal jurisdiction of this Court over Defendant Perkins Eastman.

### B. Factor 3: The Relation of the Cause of Action to These Contacts.

The relation between the cause of action and the contacts with the forum distinguishes "general jurisdiction" from "specific jurisdiction." *Viracon*, 929 F.Supp.2d at n.8. Put another way, specific jurisdiction is derived from the allegations of the complaint, while g*eneral jurisdiction* exists where a defendant's forum contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citation omitted). General jurisdiction may still exist when specific jurisdiction is not alleged in the complaint, however "[f]or defendants who are not 'citizens' of the forum state [like the nonresident Defendant here], the standard for general personal jurisdiction is particularly stringent." *Int'l Mktg. Res., Inc. v. Maquilaplex, L.L.C.*, No. Civ. 02-3459 (DWF/SRN), 2002 WL 31689436, at *2 (D. Minn. Nov. 27, 2002).

Datalink's Complaint fails to allege facts which might confer general jurisdiction of the Court over this Defendant. Defendant admits to having previously done work in Minnesota as a vendor for one design project, however, nothing about that single brief contact with the State of Minnesota was "continuous and systematic." (Adelhardt Decl., at ¶ 8.) Plaintiff's Complaint does not allege any general conduct by Defendant to secure business in Minnesota. Defendant's principal place of business is in New York, it has no office in Minnesota, no employees in Minnesota, no bank accounts in Minnesota and owns no real property in Minnesota. (*Id.* at ¶¶ 2-3.)

Defendant Perkins Eastman has an international architectural practice. In this day and age, it is only natural that Defendant has a website accessible from anywhere in the

world.  (Adelhardt Decl., at ¶ 9.)  But the website does not market or advertise specifically to Minnesota residents, nor are Minnesotans (or anyone else) able to "purchase" goods or services from Defendant's website.  (*Id.*)  This limited scope of insubstantial contact with Minnesota cannot confer general jurisdiction over Defendant. *See Burlington Indus., Inc. v. Maple Indus., Inc.,* 97 F.3d 1100, 1103 (8th Cir. 1996) (holding that defendant did not have "continuous and systematic" contacts despite the fact it purchased and sold products in the state, because defendant was not registered to do business there, had no offices, inventory, bank accounts, real estate, personal property, employees, or agents in state); *Comfort Heat Sys., LLC v. Royall Mfg., Inc.*, Civ. No. 08-5246 ADM/JSM 2009 WL 313443, at *3 (D. Minn. Feb. 6, 2009) (holding that defendant did not have "continuous and systematic" contacts where it had no offices, employees or bank accounts in Minnesota; had not directed any advertisements specifically at Minnesota residents; had not targeted Minnesota as a market; and any purchases of their products by Minnesota residents had been initiated by Minnesota residents).  In sum, there are simply insufficient contacts between Defendant and Minnesota for an extension of personal jurisdiction.

> **C.  Factors 4 and 5: The Interest of the Forum State in Providing a Forum for Its Residents and the Convenience of the Parties.**

Defendant points out that the five factors in the *Pecoraro* test are not weighed equally.  "The first three factors are of primary importance, while the last two factors are considered secondary."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

Naturally, Minnesota has an interest in providing a forum for one of its resident corporations, but such an interest is "minimal in . . . a dispute that has no [real] connection to this state." *Viracon* at 885 (quotation omitted). Such are the circumstances of Plaintiff's alleged contract with Defendant. Minnesota's interest in providing a forum for resident corporations simply cannot prevail when weight with the first three factors strongly supporting the dismissal of Plaintiff's Complaint.

More meaningful than the fourth factor is the fifth and final factor—the convenience of the parties. Minnesota is an indisputably inconvenient forum for <u>both</u> parties, as all of the relevant participants to the negotiation, and performance of the contract are located in the New York area. Both parties would incur extra expense in producing witnesses and documents in Minnesota. Similarly, both parties would incur more hardship making personal appearances before the District Court of Minnesota. As a result, the fifth and final factor also supports a dismissal of Plaintiff's Complaint based on a lack of personal jurisdiction.

### III. <u>In the Event This Case is Not Dismissed, Venue Should Be Transferred to the United States District Court for the Southern District of New York.</u>

Defendant Perkins Eastman respectfully requests that in the event this case is not dismissed, it should be transferred to the United States District Court for the Southern District of New York. New York is where Defendant is located the vast majority of Plaintiff's and Defendant's employee witnesses are located in New York. Defendant's non-party witnesses are located in New York. The events in the Complaint as alleged

occurred in New York.  The interests of justice overwhelmingly favor transferring this case to New York.

> **1.**      <u>**Analysis of 28 U.S.C. § 1404(a) Strongly Favors a Transfer of Venue to the Southern District of New York.**</u>

Defendant brings its motion to transfer venue under 28 U.S.C. § 1404(a), which provides in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This statute is "intended to place discretion in this district court "to rule on motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). *See also Terra Int'l Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Under 28 U.S.C. § 1404(a), the Court examines three factors when deciding a motion to transfer venue: 1) the convenience of the parties, 2) the convenience of the witnesses, and 3) the interests of justice.

> **A.**      **The Convenience of the Parties Favors Transfer of the Case to the Southern District of New York.**

The first factor the Court considers under 28 U.S.C. § 1404(a) is the convenience of the Plaintiff's chosen forum for the parties.  Although there is a presumption in favor of a plaintiff's choice of forum, that presumption is easily overcome.  *Graff v. Qwest Commc'ns Corp.*, 33 F.Supp. 2d 1117, 1121 (D. Minn. 1999).  As is the case here, deference to the plaintiff is significantly reduced when the operative facts giving rise to

the allegations in the complaint occur outside the forum state. Most notably, where there operative facts of the case occur in the defendant's proposed forum, transferring venue is favored, and a motion to transfer venue is "likely to succeed." *Nw. Territory Ltd. P'Ship v. Omni Props., Inc.*, No. Civ. 04-4531 (JNE/SRN), 2005 WL 3132350, at *6 (D. Minn. Nov. 22, 2005); *see also GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Fin. Servs.*, No. Civ. 02-1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003).

Plaintiff admits that Defendant is a New York corporation, with its principal place of business in New York. The operative facts from Plaintiff's Complaint did not occur in Minnesota; the operative facts took place primarily in New York, with some services were performed at Defendant's locations outside of New York, and none in Minnesota. Plaintiff's Complaint admits that Plaintiff's performance under the contract occurred entirely outside of Minnesota, as Defendant could have not have accepted the "goods delivered and services rendered" in Minnesota because Defendant does not have an office in Minnesota. (Compl., at ¶ 10; *see also* Adelhardt Decl., ¶ 10.) Furthermore, the individuals named in the purchase order and parties to the correspondence cited by Plaintiff (Lam and Aiello) are on the East Coast—not in Minnesota. (*See* Compl., at ¶¶ 5-12.) Plaintiff's Complaint does not mention a single instance of any employee of Defendant stepping foot in Minnesota.

Plaintiff's choice of forum carries little weight here. Venue in Minnesota provides no tangible benefit to either party, and the convenience of the parties favors transferring this action to New York.

**B.** **The Convenience of the Witnesses Favors Transfer to the Southern District of New York.**

As the Supreme Court explained, the convenience of the witnesses is an important factor for the Court since it determines the "relative ease of access to sources of proof." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *accord Graff v. Qwest Commc'ns Corp.*, 33 F.Supp. 2d 1117, 1121 (D. Minn. 1999). When considering the convenience of witnesses, relevant considerations include the number of essential non-party witnesses, the location of all the witnesses, the preference of the courts for live testimony as opposed to depositions, and other issues concerning the relative ease of access to sources of proof. *S & G Janitschke, Inc. v. Cottman Transmission Sys., LLC*, No. Civ. 05-2896 (DSD/SRN), 2006 WL 1662893, at *7 (D. Minn. June 8, 2006) (citations omitted). Courts also often consider the time employees would have to leave work to travel to the forum state to testify when considering the convenience to the parties. *Doula v. United Techs. Corp.*, 759 F. Supp. 1377, 1384 (D. Minn. 1991) (noting that where defendants had a principal place of business in forum district, it suggested that a transfer to that district was appropriate).

As the obvious witnesses in this action are identified repeatedly in Plaintiff's Complaint. Two listed employees of Defendant (Lam and its CFO), both of which are located in New York. (Compl. at ¶ 7, 14; Adelhardt Decl., ¶¶ 6-7.) Defendant has no employees, nor other witnesses in Minnesota—they are exclusively located in New York. (Adenhardt Decl., ¶ 11.) Plaintiff's Complaint makes no mention of any witnesses or sources of information exclusively located in Minnesota.

The Court should take notice that Ms. Lam no longer works for Defendant. (Adelhardt Decl., ¶ 6.) She is the only known non-party witness whose testimony will be crucial in this case, and she is subject to compulsory process only in New York. District courts in Minnesota have consistently founds the unavailability of compulsory attendance of key witnesses to be a compelling reason to transfer a case. *See Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1276 (D. Minn. 1988); *Nelson v. Soo Line R. Co.*, 58 F.Supp. 2d 1023, 1027 (D. Minn. 1999). Defendants would be severely hampered in its efforts to litigate this case if it could not provide the fact finder with access to live witness testimony from its former employee who is alleged to have struck a deal with Plaintiff. *See Hoppe*, 683 F.Supp. at 1276 ("[f]orcing defendant to conduct its case by deposition, even videotape deposition, is simply unjustified").

Balancing the convenience of the witnesses in this case is simple. Both Plaintiff and Defendant will rely on the "Project Contacts" in New York that negotiated a contract to provide services, provided the services, and were parties to the discussions from December 2012 onward. The convenience of witnesses weighs in favor of a transfer of venue.

### C. The Interest of Justice Also Favors Transfer of Venue.

Finally, transferring venue to the Southern District of New York would advance the interest of justice. "Courts weigh the interest of justice factor very heavily, and it 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Product Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, 2006 WL 2085413 at *3 (D. Minn. July 25, 2006). In weighing the interest of

justice, the Court considers several factors including the relative familiarity of each court with the law to be applied, the relative ability of the parties to bear the expense of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, conflict of law issues, advantages of having a local court determine local law, and obstacles to a fair trial. *Graff*, 33 F.Supp.2d at 1122; *Terra Int'l, Inc.*, 119 F.3d at 696.

Plaintiff's Complaint is based on an agreement to provide services to Defendant. It contains two counts: breach of contract, and unjust enrichment. (Compl. at ¶¶ 16-27.) Plaintiff claims it has already provided the goods and services to Defendant outside of Minnesota. (Compl. at ¶ 23.) Plaintiff, as the drafter of the Statement of Work form is the basis of the contract, could have included a forum-selection clause, or choice-of-law clause. It did not do so. Plaintiff's Complaint contains no unique or original Minnesota statutes, law or rules that a New York court would find difficult or unusual, rather it contains common law claims. (Compl., at ¶¶ 16-27.)

Plaintiff is certainly better equipped to bear the cost of litigation in New York than Defendant would be to litigate in Minnesota. Defendant would need to pay transportation and accommodations for multiple party and non-party witnesses to attend depositions and trial in Minnesota. Defendant would need to bring all of its records and relevant documents to Minnesota. As Defendant does not have a Minnesota office, this is a massive inconvenience. Remarkably, Plaintiff's New York office probably has possession of all documents relevant to this contract dispute, and all employee witnesses to prepare its case. In sum, it is quite likely that neither party needs to send witnesses or documents to New York as they are already there. Where the convenience of the parties

and the witnesses favor transfer, the interest of justice factor is furthered by a transfer. *See Nelson*, 58 F.Supp. 2d at 1027 ("where party and witness convenience weigh strongly in favor of transfer, courts have repeatedly found that transfer under § 1404(a) comports with the interest of justice").

## CONCLUSION

Plaintiff's Complaint must be dismissed pursuant to Rules 12(b)(5) and 12(b)(2) due to insufficient service of process and the lack of personal jurisdiction over Defendant. Alternatively, the convenience of the parties, the convenience of the witnesses, and the interest of justice all strongly weigh in favor of transferring venue to the Southern District of New York. Defendant respectfully requests that in the event this Court does not dismiss Plaintiff's Complaint, the Court enter an Order transferring venue to the United States District Court for the Southern District of New York.

**FOLEY & MANSFIELD, P.L.L.P.**

Date: November 6, 2013.    By  */s/ Douglas J. McIntyre*
Douglas J. McIntyre, Esq. (#212027)
Kyle A. Eidsness, Esq. (#0392160)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
Phone: 612-338-8788

**ATTORNEYS FOR DEFENDANT**
**PERKINS EASTMAN ARCHITECTS, P.C.**

20