**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Datalink Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>Perkins Eastman Architects, P.C.,<br><br>        Defendant. | Case No. 13-cv-02978 (SRN/JJG)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Michael F. Cockson and Amanda Rome, Faegre Baker Daniels L.L.P., Minneapolis, MN, for Plaintiff.

Douglas J. McIntyre and Kyle A. Eidsness, Foley & Mansfield, P.L.L.P., Minneapolis, MN, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.  INTRODUCTION

Plaintiff Datalink Corp. ("Datalink"), a Minnesota-based data center solutions provider, brought this suit against Perkins Eastman Architects, P.C. ("Perkins Eastman"), a New York company, alleging breach of contract and unjust enrichment.[1]  Perkins Eastman now moves to dismiss the Complaint for lack of personal jurisdiction and insufficient service of process.  Alternatively, Perkins Eastman requests that the Court transfer this case to the United States District Court for the Southern District of New York, pursuant to 28

---

[1] Datalink originally filed this suit in the state district court of Hennepin County, Minnesota.  Perkins Eastman removed the matter to this Court on the basis of diversity jurisdiction.  *See* 28 U.S.C. §§ 1332, 1441.

U.S.C. § 1404(a).  For the reasons set forth below, Defendant's Motion [Doc. No. 4] is denied.

## II.  BACKGROUND

Perkins Eastman is an international planning, design, and consulting firm with multiple offices in the United States and around the world.  (Notice of Removal [Doc. No. 1], Ex. 1. ("Compl.") ¶ 3.)  Despite its global presence, it is not registered to do business in Minnesota, has no employees or assets in Minnesota, and owns no real property in Minnesota.  (Adelhardt Decl. [Doc. No. 7] ¶¶ 2, 3.)

In early 2012, Alan Ho, Perkins Eastman's Senior Associate Director, Systems, and Kim Lam, Associate Principal Director, Technology, contacted a North Carolina corporation, StraTech,[2] regarding issues with Perkins Eastman's data backup solution.  (Aiello Decl. [Doc. No. 13] ¶ 2.)  Over the course of the following few months, the parties analyzed Perkins Eastman's backup system, and StraTech ultimately recommended replacing it with Symantec NetBackup ("NBU") and Symantec NBU appliances.  (*Id.*)

In October 2012, StraTech was acquired by Datalink.  (*Id.* at ¶ 3.)  At that time, Datalink's New York-based account executive, John Aiello, presented an overview of the company to Ho and Kim, and explained that Datalink was headquartered in Minnesota, where its operations were also managed.  (*Id.*)  Subsequent to that meeting, Perkins Eastman decided to follow Datalink's recommendation to replace their legacy data backup system with Symantec NBU and NBU appliances.  On December 27, 2012, Lam sent a signed

---

[2] StraTech was incorporated in Delaware, with its principal place of business in Crary, North Carolina.  (Def.'s Reply Mem. [Doc. No. 14] at 3 n.1.)

Purchase Order to that effect to Aiello via e-mail, who then forwarded it to Datalink headquarters in Minnesota for processing. (*Id.* at ¶¶ 5, 6.)

Upon receipt of the Purchase Order, Datalink's order processing team assigned a Minnesota-based project coordinator and obtained the various hardware, software, and personnel resources needed to complete the project. (*Id.* at ¶ 7.) Simultaneously, the accounts receivable department, also located in Minnesota, ran a "series of inquiries" to determine Perkins Eastman's creditworthiness. (*Id.* at ¶ 8.) Once Perkins Eastman was approved, Datalink employees ordered the necessary equipment and began pre-configuring it based on specifications provided by Perkins Eastman. (*Id.* at ¶¶ 8, 10, 11.)

At the request of Ho and Lam, all of the NBU appliances were shipped to Datalink's Minnesota warehouse for storage, where they remained for approximately three months. (*Id.* at ¶¶ 8, 9.) According to Aiello, Datalink's storage was necessary for two reasons: one, because Perkins Eastman's data center locations were not yet ready to receive the NBU appliances, and two, because Perkins Eastman needed Datalink to preconfigure the devices to simplify installation upon delivery.[3] (*Id.* at ¶ 9.) After the NBU appliances were configured, Datalink warehouse employees re-packaged and shipped the hardware from Minnesota to Perkins Eastman's data center locations across the United States. (*Id.* at ¶ 11.)

On March 27, 2013, however, following delivery of the NBU appliances, Lam contacted Aiello to express her concerns about whether Perkins Eastman could move

---

[3] According to Aiello, four of Perkins Eastman's data centers were "unmanned," meaning they did not have engineers on-site who were capable of configuring the NBU appliances. By having Datalink pre-configure the NBU appliances, Perkins Eastman could then have a non-engineer located at the unmanned centers simply start up the machines so that they could be further configured remotely. (Aiello Decl. ¶ 9.)

forward with the NBU implementation. (Compl. ¶ 11.) Lam explained that Perkins Eastman had been in merger talks with "another sizeable" architecture firm since January 2013, and that there was concern that an investment in NBU would result in an incompatible back-up and recovery system for the combined firm. (*Id.*) Perkins Eastman subsequently failed to pay any of the nine invoices sent by Datalink for work performed under the NBU Purchase Order. (*Id.* at ¶ 13; Aiello Decl. ¶ 20.) After Datalink's attempts to collect the past-due amount met without success, this action was commenced in Minnesota state court in September 2013. Perkins Eastman removed the action to this Court on diversity grounds, and now moves to dismiss Plaintiff's Complaint.

### III.   PERSONAL JURISDICTION

#### A.   Legal Standard

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a *prima facie* showing of jurisdiction." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the [forum] state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). This inference is subject to testing not solely on the pleadings alone, however, but "by the affidavits and exhibits presented with the motions and in opposition thereto." *Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). Where (as here) the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the

nonmoving party, and resolve all factual conflicts in favor of that party. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing *Dakota Indus., Inc.*, 946 F.2d at 1387).

Personal jurisdiction is only appropriate, however, if state and constitutional requirements have been met. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing *Wines v. Lake Havasu Boat Mfg.*, 846 F.2d 40, 42 (8th Cir. 1988)). First, the facts presented must satisfy the state's long-arm statute.[4] *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Second, personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* Because the Minnesota Supreme Court has interpreted the Minnesota long-arm statute to be co-extensive with the limits of due process, this Court need only address the second of these requirements. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (citing *Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985)).

The bounds of due process permit a court to exercise personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

---

[4] Here, Minn. Stat. § 543.19.

5

297 (1980). "In assessing the defendant's 'reasonable anticipation,' there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Soo Line R.R. Co.*, 526 F.2d at 528–29 *(*quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). The unilateral activity of the plaintiff in claiming some relationship with the defendant is not sufficient to satisfy this requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

From these core principles, the Eighth Circuit has distilled a five-factor test to be used in analyzing the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. This test considers: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). The Minnesota Supreme Court has adopted the same five-factor test. *See, e.g.*, *Nat'l City Bank of Minneapolis v. Ceresota Mill Ltd. P'ship*, 488 N.W.2d 248, 252–53 (Minn. 1992). The third factor, the relation of the cause of action to the contacts, serves to distinguish the appropriate theory of jurisdiction: general or specific. "[G]eneral jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose, while specific jurisdiction requires that the cause of action arise from or relate to a defendant's actions

within the forum state." *Wells Dairy, Inc.*, 607 F.3d at 518 (internal quotation and citation omitted). Finally, within the confines of the five-factor test, the first three factors are accorded greater weight than the latter two. *See Soo Line R.R. Co.*, 526 F.2d at 529; *Nat'l City Bank of Minneapolis*, 488 N.W.2d at 253.

### B. Analysis

As an initial matter, the Court notes that general jurisdiction over Perkins Eastman is clearly lacking. "A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Here, the undisputed declaration of Andrew J. Adelhardt III, Perkins Eastman's General Counsel, establishes that Perkins Eastman is not registered to do business in Minnesota, has no employees in Minnesota, no assets in Minnesota, and no registered agent in Minnesota. (Adelhardt Decl. ¶ 2.) It has conducted one architectural design project within the state, unrelated to the matter at hand. (*Id.* at ¶ 8.) That single prior contact is neither "continuous" nor "systematic"—certainly not to the point of rendering Perkins Eastman "at home" in Minnesota. Accordingly, a finding of personal jurisdiction must be based on specific contacts directly related to Perkins Eastman's interactions with Datalink.

In recognition of that requirement, Datalink adduces a number of facts related to the cause of action that it asserts are sufficient, taken together, to show that Perkins Eastman

"purposefully availed itself of the privileges of conducting business in Minnesota." (Pl.'s Mem. in Opp. [Doc. 12] at 7.)  First among these is the contention that Perkins Eastman "actively pursued a business relationship with Datalink . . . ." (*Id.* at 9.)  It is true, as this Court has previously recognized, that "whether or not the nonresidential defendant is the aggressor in a transaction is important in assessing personal jurisdiction." *Coen v. Coen*, No. 05-596, 2006 WL 2727219, at *20 (D. Minn. Sept. 22, 2006).  *See also Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 296 (Minn. 1978) ("This court . . . has considered a defendant's having purposefully solicited contacts with a Minnesota resident or having initiated or induced the transaction out of which the cause of action arises as a crucial factor justifying the assumption of personal jurisdiction.")  Datalink's portrayal of Perkins Eastman's actions is not entirely accurate, however.  Perkins Eastman reached out to StraTech, a North Carolina corporation.  From Perkins Eastman's perspective, Datalink's subsequent involvement in the project, upon purchasing StraTech, was essentially random and fortuitous.  Indeed, John Aiello admits that the first contact between Datalink and Perkins Eastman was made when he presented an overview of the company to Alan Ho and Kim Lam.  (Aiello Decl. ¶ 3.)  While it may well be that Perkins Eastman subsequently made an affirmative decision to continue the discussions it had begun with StraTech with Datalink instead, it cannot reasonably be termed the "aggressor" in the initial interaction with that company.  Viewed in isolation, then, the nature of Perkins Eastman's initial interaction with Datalink cannot on its own serve to establish "purposeful availment" of

Minnesota—but neither is it immaterial. When aggregated with additional contacts that tend to establish Perkins Eastman's connection with the forum, it may yet be a factor.

The Court thus turns to consider the remaining six acts Datalink presents as representative of Perkins Eastman's contacts with the forum state. Of these, four may be characterized as essentially relating to the formation of the contract or to the transfer of information necessary to perform the work contemplated by the contract. These include Perkins Eastman's decision to enter into a contract with Datalink that was largely to be performed in Minnesota; its execution of a Purchase Order addressed to Minnesota; participation in a conference call with Datalink personnel to discuss the pre-configuration of the NBU appliances; and its completion of Datalink's "presite installation questionnaire" providing the specifications necessary for the pre-configuration of the NBU appliances. (*See* Pl.'s Mem. in Opp. at 9.)

Perkins Eastman contends, in its Reply Memorandum of Law, that ample case law exists in this circuit to show that these facts are insufficient to establish the minimum contacts necessary to warrant this Court's exercise of specific jurisdiction. In particular, it directs the Court's attention to the Eighth Circuit's opinion in *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309 (8th Cir. 1982). In that case, the court held that the defendant nonresident buyer could not be haled into court in Missouri based on the facts presented. *Id.* at 314. There, the plaintiff, a manufacturer of steel castings used in the production of railcars, negotiated a contract to deliver "car sets" to the defendant "F.O.B. Seller's Plant, St. Louis, Missouri." *Id.* at 310. After deliveries of some of the car sets had

9

been made, the defendant refused to pay the invoice price and Scullin Steel brought suit for breach of contract. *Id.*

Here, Perkins Eastman points to the substantial similarities existing between the facts in *Scullin Steel* and those presented by Datalink. In both cases, no employee of the defendant ever visited the forum state during contract negotiation or performance—instead, all communication was conducted by means of telephone, mail, or e-mail. *See Id.* at 312. Further, both cases involved production of goods in the forum state to specifications provided by the defendant, and both involved remittance of payment to an address in the forum state. *See Id.* In *Scullin Steel*, the court determined that these contacts established nothing more than the plaintiff's relationship with the defendant, not the defendant's relationship with the forum. *See Id.* at 313 ("Scullin Steel in essence relies upon its performance under the contract within the forum to supply the requisite minimum contacts."). Likewise, the court noted that "[t]he use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." *Id.* at 314 (citations omitted). In sum, the court found that Scullin Steel had failed to establish the existence of contacts beyond the basic establishment and partial execution of a contract, and that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." *Id.* at 313 (quoting *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)).

The Court recognizes, as the court in *Scullin Steel* did, that the above acts are insufficient on their own to provide a basis for an exercise of specific jurisdiction. It is well-established that "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (internal quotation and citation omitted). What distinguishes this case from *Scullin Steel*, however, and makes specific jurisdiction appropriate, are the remaining facts asserted by Datalink: that Perkins Eastman arranged for Datalink to accept delivery of its NBU appliances at Datalink's warehouse in Minnesota, to store those appliances for three months until its data centers were ready to receive them, and to pre-configure them in the interim. (*See* Pl.'s Mem. in Opp. at 9.)

In so doing, Perkins Eastman's engagement with the forum went beyond that found in *Scullin Steel*. Where, in that case, the defendant merely took possession of the finished product within the forum state and then shipped it to Pennsylvania, Perkins Eastman directed that the appliances be shipped to Datalink in Minnesota, *and then* chose to store them in Minnesota.[5] That decision was pregnant with the potential for wide-ranging legal consequences. By asking Datalink to take possession and store its property, Perkins Eastman effectively created a bailment. *See, e.g.*, *Nat'l Fire Ins. Co. v. Commodore Hotel, Inc.*, 107 N.W.2d 708, 710 (Minn. 1961) (defining a bailment as the delivery of goods from one person to another, without transfer of ownership, and acceptance of the delivery on the

---

[5] The Court recognizes that Perkins Eastman denies that it arranged for shipment of the NBU appliances to Datalink in Minnesota, or their storage there. However, for purposes of this Motion, the Court must view the facts in the light most favorable to the plaintiff, and resolve all factual disputes in its favor. *Pangaea, Inc.*, 647 F.3d at 745.

understanding that the goods are to be returned at a later time).  Had the appliances subsequently been damaged or stolen, Perkins Eastman potentially would have had a claim against Datalink under Minnesota law.  *See Id.*  Likewise, had the pre-configuration work performed in Minnesota proven substandard or defective, a claim may also have existed. By purposefully availing itself of the "privilege" of recourse to the "benefits and protections of [the forum state's] laws," *Burger King Corp.*, 471 U.S. at 475, Perkins Eastman correspondingly and implicitly accepted the obligations that might arise as a result.  *Int'l Shoe Co.*, 326 U.S. at 319.  Here, those obligations include defending suit in the forum state. *Id.*

The Eighth Circuit has used similar reasoning to distinguish *Scullin Steel*.  In *Wells Dairy, Inc.*, 607 F.3d 515, the court upheld the Northern District of Iowa's determination that specific jurisdiction existed over a California food products reseller, despite the fact that the California company had never entered the forum, and had only communicated with the plaintiff corporation in California, or by phone and fax.  *Id.* at 517.  As in *Scullin Steel*, the delivery terms arranged by the parties required the defendant to pick up the product at the plaintiff's factory for shipment out of state.  *Id.*  However, the court noted that in practice, the defendant allowed its *customers* to pick up the product, rather than doing so itself.  That decision, in the court's eyes, meant that the defendant had effectively transacted its business within the forum state.  *See Id.* at 520 ("[Defendant] received [Plaintiff's] product in Iowa and simultaneously transferred possession and title to its customers.").  Relying in large part

on this analysis, the Eighth Circuit determined the facts in *Wells Dairy* to be sufficiently distinguishable from *Scullin Steel* to provide a basis for jurisdiction.

Perkins Eastman contends that this Court recently denied jurisdiction in a case that it sees as analogous, in which the plaintiff also stored product intended for the defendant at its warehouse for a period of months. *See Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878 (D. Minn. 2013). The relevant facts of that decision are materially distinguishable from those at issue here, however. In *Viracon*, the court dismissed the plaintiff's allegation that the defendant "had opted to store [product] with [the plaintiff] at its facilities in [the forum state]" by noting that "it was [the *plaintiff*] that opted to store the [product] here, not [the defendant]." *Id.* at 884 (emphasis as in original). On that basis, the court said, "[Defendant] simply cannot be subject to jurisdiction in this state because of [the plaintiff's] conduct." *Id.* at 884–85. Here, because the Court accepts for purposes of this Motion that Perkins Eastman requested that Datalink store the appliances, *Viracon* cannot be considered on point.

The Court thus finds that the three main jurisdictional factors considered by the Eighth Circuit—the nature, quality, and quantity of the defendant's contacts with the forum, and the relation of those contacts to the cause of action—weigh in favor of an exercise of specific personal jurisdiction. The two remaining, secondary factors—the interest of the forum and the convenience of the parties—do not alter that determination. Minnesota, naturally, has a clear interest in providing a forum for a corporation based in this state. *See, e.g.*, *Wells Dairy, Inc.*, 607 F.3d at 520. And while Minnesota may be inconvenient as a

forum for Perkins Eastman, New York would be equally inconvenient for Datalink. With potential witnesses scattered across the country, the balance of convenience "is in equipoise." *Viracon, Inc.*, 929 F. Supp. 2d at 885. All factors thus considered, this Court concludes that it may properly exercise personal jurisdiction over the defendant here.

### III. INSUFFICIENT SERVICE OF PROCESS

Perkins Eastman also moves to dismiss Datalink's Complaint for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). In particular, Perkins Eastman contends that Datalink improperly served its Summons and Complaint via a mailing from the Minnesota Secretary of State. (*See* Def.'s Mem. [Doc. No. 6] at 5.) According to Perkins Eastman, because it is a New York corporation that is not authorized to do business in Minnesota and has no registered agent appointed within the state, Minnesota's service of process statute does not permit service upon it via the Secretary of State. (*Id.*) In support, Perkins Eastman cites to Minn. Stat. § 5.25, subd. 4(a) ("Service of a process, notice, or demand may be made on a foreign corporation *authorized to transact business in this state* by delivering to and leaving with the secretary of state . . . .") (emphasis added). Because Perkins Eastman is not authorized to do business in Minnesota, it argues Datalink's attempt at service was deficient and its Complaint must accordingly be dismissed.

In citing to Minn. Stat. § 5.25, subd. 4(a), Perkins Eastman apparently neglected to consider subd. 4(b). That section provides as follows:

> *A foreign corporation is considered to be doing business in Minnesota if it makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota . . . . These acts are considered to be equivalent to the appointment by the foreign corporation of the secretary of*

>  state of Minnesota and successors to be its true and lawful attorney upon whom may be served all lawful process in actions or proceedings against the foreign corporation arising from or growing out of the contract or tort.

Minn. Stat. § 5.25, subd. 4(b) (emphasis added).  *See also Applied Equipment Co. v. AEC, Inc.*, No. 09-514, 2010 WL 889944, at *11–12 n.6 (D. Minn. Mar. 8, 2010) (rejecting Defendant's contention that it is not subject to the service-of-process procedures of Minn. Stat. § 5.25 because it is not "doing business" in Minnesota).  Here, Datalink is unquestionably a Minnesota corporation.  While there may be a factual dispute as to whether Perkins Eastman and Datalink had entered into a binding contract or whether the work to be performed was to occur in Minnesota, the Court must, for purpose of this Motion, resolve all such disputes in Datalink's favor.  *See, e.g.*, *Metcalf v. City of Minneapolis,* No. 11-3023, 2012 WL 2357573, at *2 (D. Minn. June 20, 2012).  Accordingly, the Court concludes that Perkins Eastman was properly considered to be doing business in Minnesota for purposes of Minn. Stat. § 5.25, and thus that service of process through the Minnesota Secretary of State was proper.

## IV.   TRANSFER OF VENUE

In the alternative, Perkins Eastman moves to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The party seeking to transfer venue normally bears the burden of establishing that a transfer is warranted.  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).   That

burden may not be met simply by showing that the "factors are evenly balanced or weigh only slightly in favor of transfer." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 964 (D. Del. 1993)). Rather, the balance of factors must "strongly" favor the movant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In making a determination on a transfer motion, this Court considers the convenience of the parties and the witnesses, as well as the interests of justice. *Graff*, 33 F. Supp. 2d at 1121. The presumption is in favor of the plaintiff's choice of forum, especially where the plaintiff resides in the district in which the lawsuit was filed. *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 836 (D. Minn. 2007).

Here, Perkins Eastman contends that venue would be more proper in the Southern District of New York because the "operative facts" listed in Datalink's Complaint occurred primarily in that district. (Def.'s Mem. at 16.) Additionally, Perkins Eastman argues that New York would be more convenient for important non-party witnesses, that it would be a "massive inconvenience" to have to bring its records and relevant documents to Minnesota, and that Datalink is "better equipped to bear the cost of litigation in New York than [Perkins Eastman] would be to litigate in Minnesota." (*See Id.* at 18–19.) Finally, Perkins Eastman contends that New York law likely controls on the issue of contract formation, and therefore, a New York court is better equipped to adjudicate the issues presented. (Def.'s Reply Mem. at 19.)

The Court is unpersuaded that Perkins Eastman has carried its considerable burden of demonstrating that the balance of factors strongly favors transfer. As an initial matter, the convenience of the parties cannot be said to be demonstrably in favor of Perkins Eastman. Just as it would be inconvenient for Perkins Eastman to bring its records and party witnesses to Minnesota, so it would be equally inconvenient for Datalink to bring the same to the Southern District of New York. Transfer of venue does not exist simply to shift the inconvenience from the defendant to the plaintiff. *Hearth & Home Techs., Inc. v. J & M. Distrib., Inc.*, No. 12-00686, 2012 WL 5995232, at *9 (D. Minn. Nov. 30, 2012). Perkins Eastman's contention that the "operative facts" occurred in New York does not change that determination. At this early stage, the factors relevant to determining the merits of breach of contract and unjust enrichment claims cannot be determined with great specificity. Further, that one of Datalink's employees resides in New York does not diminish the burden that would be placed on those residing in Minnesota if forced to travel to New York to testify. Accordingly, this factor does not favor transfer.

As to the convenience of the witnesses, this Court considers the number of non-party witnesses, the location of all witnesses, and the preference for live testimony. *See, e.g.*, *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F. Supp. 2d 1033, 1045 (D. Minn. 2001). Perkins Eastman notes that the only non-party witness identified by either party, Kim Lam, no longer works for Perkins Eastman, and is not subject to compulsory process by this Court. This is an important consideration, as a defendant should generally not be forced to "conduct its case by deposition." *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D.

Minn. 1988). Without knowing whether Lam would resist voluntarily traveling to Minnesota to testify at trial, however, the Court is hesitant to place too much weight on the prospect of her absence. *See Lyon Fin. Servs. v. Century 21 Hacienda Realty*, No. 02-3817, 2003 U.S. Dist. LEXIS 24560, at *15 (D. Minn. Aug. 29, 2003). As to likely party witnesses, Perkins Eastman identifies only its Chief Financial Officer, Candace Carroll, as residing in New York. (Def.'s Mem. at 17.) Other potential witnesses mentioned in the parties' briefing appear to reside either in Minnesota or elsewhere throughout the country. (*See* Pl.'s Mem. in Opp. at 14–15; 17.) Thus, the Court concludes that, at most, the convenience of witnesses factor weighs only slightly in favor of Perkins Eastman—and "slight" is insufficient as a basis for transfer. *Graff*, 33 F. Supp. 2d at 1121.

In considering the interests of justice factor, the Court considers, *inter alia*, the plaintiff's choice of forum, judicial economy, the relative ability of the parties to bear the expense of litigating in a distant forum, the obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine issues of local law. *See, e.g.*, *Terra Int'l, Inc.*, 119 F.3d at 696. Many of these concerns are not relevant here. However, as previously noted, Datalink's "choice of a Minnesota forum is an important consideration, particularly given that it is a Minnesota company." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009 WL 1684428, at *6 (D. Minn. June 16, 2009) (internal quotation and citation omitted).

Perkins Eastman argues, however, that New York law applies to this dispute, and that the advantages resulting from adjudication by a New York judge outweigh Datalink's

interest in its chosen forum. (Def.'s Reply Mem. at 19.) Whether Perkins Eastman is correct in its assessment of the applicable law is disputed—Datalink appears to suggest otherwise. (Pl.'s Mem. in Opp. at 19.) Nonetheless, even accepting Perkins Eastman's assertion, "the scales would tip very little (if at all) in favor of transfer because federal courts often are called upon to apply the law of other states." *Advanced Logistics Consulting, Inc.*, 2009 WL 1684428, at *6. *See also Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) ("[C]ourts can . . . apply the law of another state as easily as their own."). Where ample guidance exists on the application of a foreign state's laws—as, unquestionably, is the case in the context of New York contract law—there is little need to afford any significant weight to this particular consideration. *See Id.* Certainly, that weight does not offset the presumption in favor of Datalink's chosen forum. All factors thus considered, Perkins Eastman has failed to satisfy its heavy burden of demonstrating that the Southern District of New York is a more convenient forum than the District of Minnesota. *Id.*

    **THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss for lack of personal jurisdiction [Doc. No. 4] is **DENIED**;

2. Defendant's Motion to Dismiss for insufficient service of process [Doc. No. 4] is **DENIED**; and

3. Defendant's alternative Motion to Transfer Venue [Doc. No. 4] is **DENIED**.

Dated:  July 16, 2014                            s/Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge